Sallie M. Thomas, Appellant, v. Morris S. Thomas, Appellee.

### Gen. No. 16,042.

1.  DIVORCE—*when cross-bill germane.*    A cross-bill is germane to an original bill charging desertion which does not pray for divorce but which does seek the custody of the children of the marriage upon the ground of the desertion of the complainant charged in such cross-bill.

2.  DIVORCE—*jurisdiction as to awarding custody of children.*    A court of chancery by assuming jurisdiction of a proceeding for divorce becomes vested with power to make such distribution of the children of the marriage as may be for their best interests.    The custody of such children may be awarded to either or neither of the parents.

3.  DIVORCE—*jurisdiction over children irrespective of entry of decree of annulment.*    Notwithstanding the complainant in a divorce proceeding abandons her bill and the defendant though entitled to a decree refuses to accept one, the court has jurisdiction to award the custody of the children of the marriage to such defendant.

Divorce.    Appeal from the Superior Court of Cook county; the Hon. FARLIN Q. BALL, Judge, presiding.    Heard in court at the October term, 1909.    Affirmed.    Opinion filed June 2, 1910.

FOLLANSBEE, McCONNELL & FOLLANSBEE, for appellant.

C. C. POPPENHUSEN and JOSEPH L. McNAB, for appellee.

MR. PRESIDING JUSTICE HOLDOM delivered the opinion of the court.

This is a cause matrimonial, in which the wife sought a divorce from her husband on the grounds of desertion. After filing her bill the wife fled the jurisdiction of the court, taking with her one of the two sons, the fruit of the mismated union, named Carr M. While the wife has been traced to various places in this country and beyond seas to the oriental city of Yokohama, the record is silent as to her whereabouts and that of the boy, Carr M., at the time of the entry of the decree from which the wife prosecutes this appeal. After answering the bill, in which all charges of desertion were denied, the appellee husband interposed a cross-bill charging his wife, the appellant, with desertion, and not wishing a decree of divorce, did not pray for that relief, but desiring to have awarded to him the custody of the two children of the marriage, prayed for their custody and that the boy, Carr M., be returned to the jurisdiction of the court and delivered to him. To this cross-bill appellant answered the charge of desertion and demurred to the remaining part, which prayed for the custody of the children. This demurrer was overruled and the cross-bill taken as confessed. The cause being reached on the trial calendar all the parties appeared by their counsel, appellant not appearing in person, although appellee did. Counsel for appellant thereupon moved the court to dismiss the original bill, but appellee objecting the motion was denied. The cause then proceeded to trial upon the averment of the cross-bill, and notwithstanding the cross-bill had been taken as confessed on the part of appellant, she was permitted to and did offer all the evidence her counsel desired or was able to offer. Nothing proffered as proof by appellant's counsel in behalf of their absent client was refused. After a

patient hearing and giving counsel for appellant every opportunity to present their client's case under the pleadings, the learned chancellor ordered appellant to return the child, Carr M., to appellee within thirty days. Appellant not complying with this order, the court after the lapse of thirty days from its entry proceeded to a final decree, dismissing appellant's bill for want of prosecution, finding categorically every averment of the cross-bill of appellee to be true as charged, adjudging him to be a fit and proper person to have the care and custody of the children of the marriage, Benjamin M. and Carr M. Thomas, and awarding them to him and enjoining appellant from in any manner interfering with their custody by appellee until the further order of the court. However, the court retained jurisdiction of the cause for the purpose of disposing of all questions arising from the failure of appellant to return Carr M. Thomas to his father within thirty days from May 13, 1909, the date of the entry of that order.

The propriety of the decree is not disputed by either of the parties, and we do not, therefore, feel called upon to express either our concurrence or disapproval of it.

Appellant states and argues two propositions, viz:

First. That the cross-bill is not germane to the subject-matter of the original bill, and that the court should have sustained the demurrer filed to it.

Second. That the court had no jurisdiction to decree the custody of the children without entering a decree of divorce.

Although we shall strictly confine this opinion to the disposition of the two points above stated, still we are neither unmindful nor inappreciative of the excellence of the briefs submitted by counsel, containing, as they do, a wealth of authority, the result of their diligence, learning and zeal for the cause they each represent. While our disposition might, if indulged, lead us to follow counsel in discussing the numerous

authorities to which we have been so interestingly referred, still such task is not imperative to a proper or intelligent disposition of this appeal, and the backward state of the docket inhibits our indulgence in any effort which might savor or appear to be a work of supererogation.

First. We think it axiomatic that whenever a court of chancery takes jurisdiction of a matrimonial cause, the children of such marriage, if there are any, are involved, and their custody, nurture and training are the care and solicitude of the court. Whenever the domestic relations are such that the hearthstone is shattered and the family home destroyed and equity is appealed to to adjust the differences existing between the husband and the wife, the chancellor should always inquire as to the children of the marriage and provide for their welfare and give them to the custody of whichever party it may be for the best interest of the children to be entrusted to; and should, when necessary, go to the extreme of giving them to the custody of a stranger when neither of the parents is a fit or proper person to retain and nurture them. It is the policy of the State to care for the children of the Republic and to see to it that their best interests are conserved. It will not do for a husband or wife to seek the aid of a court of equity to straighten out domestic tangles and by failing to mention the children of the marriage to the chancellor, as in the instant case, deprive such children of the protection of the court and care for their well being and proper bringing up. A court of chancery sitting as a court of divorce will, where necessary in the interest of the children, deliver them from the selfishness of a parent and provide by decree for their best interests, and this it will do even against the protest of both parents in an emergent case. As an example we might suppose that this cause had gone to a hearing on appellant's bill and appellee had confessed the desertion charged, so that a decree against him must follow. Yet he says to the chancellor, "While I

do not love my wife, I do love, most devotedly, my children, and I cannot bear the thought of being separated from them. My wife is a globe trotter and I can't run after her all the time. I am domiciled here where my business interests are and where my marriage took place and my children were born. My character is good. I am in every way a fit and proper person to be entrusted with my children. Give them to me so that I may care for and educate them in the city of their birth''. Under such circumstances and conditions the chancellor would be unmindful of his duty if he failed to heed such an appeal and grant the request. That is substantially this case, shorn of the cross-bill, on the assumption of appellee's willingness to gratify appellant's desire for a divorce by conniving at her deception of the court as to the truth of the charge of desertion.

Without the statute providing for divorce, none could be granted. Neither can a divorce be procured save for the causes mentioned in the statute. However, when the court obtains jurisdiction in a cause for divorce, it is vested by section 6 of the Act, chapter 40, R. S., with all the attributes of chancery jurisdiction except where otherwise provided by the Act. By section 13 the court is vested with power over the custody of the children of the marriage *pendente lite*, and by section 18 of their permanent care and custody by the final decree fixing and disposing of the rights and status of all concerned. We therefore hold that the averments of the cross-bill relating to the custody of the children of the marriage were sufficiently germane to the subject-matter of the original bill of appellant for divorce to make such cross-bill invulnerable against attack on demurrer.

Second. Whether the court could enter a decree on the cross-bill disposing of the custody of the children of the marriage without awarding a divorce, because of the fact that appellee did not so pray in his cross-bill, is not altogether free from doubt. The main object of

the bill and cross-bill was divorce. Each charged the other with being guilty of the same offense, which by the divorce statutes *supra* entitled the innocent party to a decree severing the bonds of matrimony. The custody of the children was an incident and collateral to the divorce prayed. There can be little doubt as to the Superior Court being invested with full equity powers and prerogatives in all equity causes to the same extent as the courts of chancery under the English practice and procedure. But a matrimonial cause was never an adjunct of the jurisdiction of the court of chancery, and is not jurisdictional in that department now under the existent Judicature Act. But in Illinios it is different; the equity side of the court has been invested with exclusive jurisdiction in matrimonial causes, and the practice and procedure of such courts have been extended to embrace such causes. The point under discussion has not received judicial interpretation in this jurisdiction, and counsel have failed to cite any case directly in point, for the cogent reason, we take it, that their careful research has failed to disclose any such case. Certain it is, that a painstaking search on our part has met with no reward. True it is, there are cases which hold that where a decree of separation is refused the court will decline to pass upon or consider the question of the custody of the children. Such was the holding of the New York Court, and its reason was grounded on the failure of the statute to so provide. But here there is no denial of divorce. Neither was such relief denied on the original bill. The right to a divorce was abandoned by appellant by failure to prosecute, and by appellee by declining to accept a decree. Had the court decided that neither party was entitled to a decree of divorce, then, on well settled principles, each party being without standing in the court of conscience, that court would leave them in *statu quo* and grant no relief to either. It seems to us the rule stated in 9 Am. & Eng. Ency. Law, 867, is in principle strongly in point and

helpful to a solution of the question under discussion. The rule is thus stated: "Courts of equity, have power to award the custody to one of the parents where they are separated, but it is doubtful whether such power can be exercised when a divorce is denied. When such power is given by the statutes the courts act upon the same principles as where a divorce is granted, the aim being to select the best guardian." Our statute, which provides for the custody of the children of the marriage *pendente lite* and also for their custody on the entry of a decree of divorce, certainly comes within the character of statutes announced in the rule *supra*. It is evident that the law making power of this State intended to vest courts of equity with full plenary powers over the children of a marriage involved in a divorce proceeding. Applying the rule to the condition confronting us in this case, what do we find? 1st. The parents of the children separated. 2nd. A divorce has not been denied to either party, although not granted to either one of them. 3rd. The chancellor has selected appellee as the best person to be the guardian of his children. As to the first proposition there is no controversy. While it is true as to the second proposition that no decree of divorce has been entered in favor of either party, still not for the reason that neither is entitled to a divorce, for appellee certainly was entitled to one if he had consented to take such a decree. It is not disputed that the chancellor in choosing between the parents acted wisely in his choice of appellee as guardian of his children. It is self-evident that wandering around the world is not conducive to the proper bringing up of children. The home is the place to rear children, surrounded as it should be by refinement and the example and control of parents who dwell together in amity and influence and nurture their children in love. A home, according to American ideals, is fixed. Appellee has a home; appellant is a rover and has no home. Appellee is well equipped mentally and financially, and as the father of his chil-

dren and the possessor of a home in a fixed place in the city of the children's birth, where friends and relatives also live, is, we think, indisputably the best person to be entrusted with the guardianship of his children. The court in so decreeing acted for the best interests and welfare of the children. Such welfare is the primary concern of a court of chancery and will outweigh every other consideration and claim.

The logical outcome of appellant's contention would be to relegate appellee to the remedy furnished by *habeas corpus* to regain the custody of his son Carr M. from his wife. Under the facts in this record, it is not seriously contended that appellee is not entitled to the custody of the absent son, or that the same facts would not procure for appellee such custody in a *habeas corpus* proceeding. Notwithstanding the Superior court, as an incident of the divorce suit, had power to control the custody of the children of the marriage, yet counsel for appellant in effect contend that because of a failure to procure a decree of divorce the court loses jurisdiction to decree the custody of the children. We are of the opinion that the court having acquired jurisdiction of the parties and incidentally of the children, no necessity exists for recourse to a writ of *habeas corpus* in an effort to enforce the right over which such court already has jurisdiction. Moreover, in this case such procedure would be abortive to bring about the result desired or to enforce the right demanded. Appellant is out of the jurisdiction of the court and her whereabouts is unknown. The child, Carr M., is at some place unknown to appellee, but known to appellant, for wherever he may be it is inferable from the record that he was placed there at the instance of appellant. It follows that no writ could be served upon her and that no process can reach the boy. Therefore unless the decree as to custody of the children is valid, appellee is without remedy and the law is impotent to afford him that relief which the merits of his cause entitle him to. And should it be

held that such decree is invalid, appellee is in danger of losing his son, Benjamin, whom he will retain, not in virtue of the decree of the court, but by the sufferance of his runaway wife.

We are constrained to the opinion that the children of the marriage of the parties to this cause became wards of the court *eo instanti* when appellant filed her bill for divorce, and that where the interests of such children are vitally at stake, the parents cannot by any action on their part, deprive such children of the protection of the court. That the undisputed facts that appellant had no cause for divorce, had fled the State taking her son Carr with her, that she has secreted Carr and placed him somewhere out of the reach of appellee, that appellant is confessedly a truant wife and appellee is in every essential a proper person to have the custody of his children, that his influence over them and care for them is for their good and their best interests, and that unless he procures such custody and control in force of the decree entered he is remediless in the matter, make so strong a case of right and justice, based on sufficient jurisdiction, as to impress us with the conviction that the decree is maintainable, and that to hold to the contrary would be trifling with justice, resulting in the denial of an undisputed right and jeopardizing the welfare and life of the children of the Thomas marriage, who are the wards of the chancery court.

Believing the decree appealed from was within the jurisdiction of the Superior Court to enter, it is affirmed.

*Affirmed.*